## SMITH & another vs. ODELL.

1. JUDICIAL POWER OF TERRITORY. By the organic law of the Territory the judicial power is vested in a supreme court, district courts, probate courts and justices of the peace, and it is not competent for the legislative assembly to create any other judicial officers or tribunals.

2. ORGANIC LAW. The organic act is to the Territory what a constitution is to a State, and the legislative assembly cannot pass an act in opposition to or in violation of it.

Smith et al. vs. Odell.

3. CONSTITUTIONAL LAW. Before a court will declare an act of the legislature unconstitutional, a case must be presented in which there is no rational doubt of its invalidity.

4. SUPREME COURT COMMISSIONERS. The allowance of a writ of *certiorari* (Wis. Stat. 340) is a ministerial and not a judicial act, and the legislative assembly has power under the organic law to create supreme court commissioners and confer on them power to allow writs of *certiorari* to justices of the peace.

ERROR to the District Court for *Iowa* County.
The case is stated in the opinion of the court.
*F. J. Dunn*, for plaintiffs in error.
*M. M. Jackson*, for defendant in error.

MILLER, J.  The defendant in error, *David J. Odell*, brought this suit before a justice of the peace of Iowa county, against these plaintiffs in error, *Michael Cassin* and *Eleazer Smith;* who, feeling themselves aggrieved by the judgment of the justice, applied to a supreme court commissioner of said county for the allowance of a writ of *certiorari* to said justice, to remove the judgment and all the proceedings in the case, to the district court of said county for revision and correction. The commissioner allowed the *certiorari*, which was issued in common form. On the return of said writ to the district court, the said *David J. Odell*, the defendant in error, moved the court to dismiss the same and all proceedings thereon, for the reason, "that it was allowed, and the bond approved, by a supreme court commissioner, who is an officer possessing no authority by the law organizing the Territory, to exercise such judicial functions." Which said motion was sustained by the court, and the writ of *certiorari* dismissed ; which is the error assigned in this court.

The question presented is, has the legislative assembly of this Territory power, under the organic law of the Territory, to create such an officer as supreme court commissioner ; and to confer upon him the power to allow a writ of *certiorari* to a justice of the peace ?

By the ninth section of the "act establishing the territorial government of Wisconsin," the judicial power of the Territory is vested in a supreme court, district courts, probate courts, and in justices of the peace. These are the courts for the disposition of all the judicial business of the Territory — and it is not competent for the legislative assembly to create any more. The creation of any additional judicial tribunal, is in the congress of the United States. The legislative assembly is authorized to limit, by law, the jurisdiction of the several courts above mentioned, both appellate and original — but no further.

By the sixth section of the organic law, the legislative power of the Territory is extended to all rightful subjects of legislation. This extends to the legislative assembly, the power to direct the manner in which all writs may be obtained. It has the power to prescribe all rules, requirements, forms and ceremonies in obtaining, issuing and serving writs, and it can, by law, declare what officers shall or may administer oaths.

In the seventh section of the organic law, it is provided, "that the governor shall nominate, and by and with the advice and consent of the legislative council, shall appoint all judicial officers, justices of the peace, sheriffs, and all militia officers except those of the staff, *and all civil officers not therein provided for.*" By this last clause it would seem, that some other officers might be created in addition to those enumerated in that law. In the exercise of the power granted to the legislative assembly, acts have been passed, and are now in force, authorizing the appointment of supreme court commissioners and conferring upon them extensive powers. Whether a supreme court commissioner is such a civil officer as must necessarily be appointed by the governor, with the advice and consent of the council, it is not necessary now to determine. Nor need we determine, whether he is a judicial officer clothed with judicial powers. There is no doubt, but that the legislative assembly can by law, create such a commissioner, and confer upon him the power to

perform such ministerial duties, as may be deemed neces-
sary in the administration of the laws.   He may be
nominally classed among the judicial officers, but at the
same time possess but mere ministerial powers.   He may
be clothed with judicial authority, which he cannot
legally exercise, but this should not prevent him from
discharging such duties as are ministerial.

The statutes of Wisconsin relating to the powers and
duties of this commissioner, are copied from those of
the State of New York ; but the constitution of that State
does not so specifically and positively define and limit
the judicial power, as does the organic law of this Terri-
tory.   Probably this is one cause of the scarcity of judicial
decisions in that State, upon the powers and duties of the
supreme court commissioner.   The statute of that State
confers upon the commissioner power to allow a writ of
*certiorari* to a justice of the peace ; but the allowance of
a common law *certiorari* is not thus conferred, but is con-
fined to the court which issues the writ.   *Caledonia Com-
pany v. The Trustees of Hoosic Falls,* 7 Wend. 508–665 ;
*Bredner v. The Superintendent of the Poor of the county
of Orange,* 9 id. 433.   But an adjudicated case cannot be
found in the books of reports of that State, after dili-
gent search, where the power of a commissioner to allow
a writ of *certiorari* to a justice of the peace has been
questioned.

Cause must be shown for a writ of *certiorari* in all cases,
where it is to review the proceeding of an inferior tribunal.
*Munro v. Baker,* 6 Cowen, 396 ; *Bogart v. The Mayor,
etc., of New York,* 7 id. 158.   Such is the requisite of our
statute.   In the second section of the act, on page 340 of
the Revised Statutes, it is provided, that the party apply-
ing for such *certiorari,* his agent or attorney, shall present
to a judge of the supreme court, or supreme court com-
missioner an affidavit, stating that in his belief, there is
reasonable cause for granting such *certiorari* for error in
such judgment (setting forth the ground of error alleged),
and that the application is made in good faith and not for

the purpose of delay, and if such judge or commissioner shall be satisfied that any error affecting the merits of the controversy has been committed by the justice, or jury, in the proceedings, verdict, or judgment, he shall allow a writ of *certiorari*, by indorsing on the affidavit his allowance thereof." It is contended, that as the commissioner is to examine the affidavit and satisfy himself therefrom that error affecting the merits of the controversy has been committed, it is a judicial investigation by a tribunal not authorized or contemplated by the organic law, and therefore void. In every act the commissioner is called upon to perform, some examination or investigation is necessary. He can make an order for security for costs (*Moore v. Merritt*, 9 Wend. 482 ; Stat. of Wis. 403), which requires an examination of the affidavit or facts required by the statutes. He can tax a bill of costs, which a party is adjudged to pay by a court of competent jurisdiction, which requires both an investigation of facts and the administering of oaths. The allowance of a writ of *habeas corpus* requires a previous examination of the petition and all accompanying documents required by the statute, but that is a mere ministerial duty, when performed by a judge in vacation. In speaking of the penalty to be imposed upon judges for not allowing a writ of *habeas corpus*, Chief Justice KENT, in the case of *Yates v. Lansing*, 5 Johns. 296, draws this distinction between judicial and ministerial acts. "The penalty to which the chancellor and judges are liable is mentioned in the fourth section of the act, and that is given against them by name, and only for their refusal, *in vacation time*, to allow a writ of *habeas corpus* when duly applied for. The chancellor and judges may refuse such a writ at their discretion, if applied for in *term* time, and the penalty will not attach. It is only when they refuse in a mere ministerial capacity to allow a writ that they are made responsible. The allowance of a writ in vacation is not a judicial act. It is merely analogous to the case stated in *Green v. The*

*Hundred of B.*, 1 Leon, 323, where it was held that an action on the case lay against a justice of the peace for refusing to take the oath of the party robbed, because in such case he did not act as a judge, but as a particular minister appointed by the statute of Elizabeth to take examinations. The *habeas corpus* act does not then, in any of its provisions, violate or even touch the principle that no suit lies for a judicial act. Though the judge is bound under a penalty to allow the writ, yet when the prisoner is brought before him, he is to discharge, bail or remand him, as he shall be advised, and no action or penalty is given for what he shall then do or refuse to do." He then acts judicially.

The laws directing the manner in which writs of *certiorari* or attachment may be obtained require the officer to be satisfied from an examination, or inspection, of the affidavit presented; but the allowance of the writ upon such examination or inspection is not an adjudication; it is merely the exercise of a judicial discretion. The officer does nothing thereby to conclude the rights of the parties. He merely inquires whether there is sufficient contained in the affidavit to entitle the party to his writ; which when served and returned, becomes the subject of judicial examination by the court, and must be quashed or abated, if allowed improvidently or issued illegally. It is a common practice for the court to quash writs that have been allowed by the judges in vacation — which is a judicial correction of a ministerial act. The court does not dispose of a case brought by *certiorari* or attachment upon the affidavit on which the writ was allowed, but upon the return of the justice in the one case and the merits of the cause in the other. The allowance of writs partakes more of an inquiry into the forms and ceremonies of the law than an investigation of any thing connected with the rights or interests of the parties, or the justice of the cause.

The act of congress organizing this Territory is in the nature of a constitution of a State. It is supreme, and

the legislative assembly cannot pass an act in opposition to, or in violation of it. The courts cannot be required to enforce such an act. It should be treated as a nullity. But before the courts would be justified in such a course, it should clearly appear that such repugnance, violation or opposition did exist. Upon the same principle, it is well settled in the courts of the United States and of the different States of this Union, that the constitution is paramount to the power of a legislature, and every act of a legislature repugnant to it is void. The judiciary is a co-ordinate branch of the government, and has a right to declare an act of the legislature void, when repugnant to the constitution, but it must be a very clear and unequivocal case to induce a court to pronounce an act of the legislature unconstitutional. When a judge is convinced that an act is unconstitutional, it is his duty to set it aside, but he must examine it with every legal intendment and presumption in favor of its validity. He is not to resort to a forced, rigid or doubtful construction of an act for the purpose of determining its unconstitutionality. Before the court will declare an act of the legislature unconstitutional, a case should be presented in which there is no rational doubt. *Vanhorn's Lessee v. Dorrance*, 2 Dallas, 304; *Cooper v. Telfair*, 4 id. 14; *Osburn v. The Bank of the U. S.*, 9 Wheat. 738; *Trustees of Dartmouth College v. Woodward*, 4 id. 518; *Ex parte McCollom*, 1 Cowen, 550; *Stoddard v. Smith*, 5 Binney, 355; *Eaken v. Raub*, 12 Serg. and Rawle, 330. After a full and fair examination, according to these principles, of the statutes relating to supreme court commissioners, and conferring upon them the powers to discharge the ministerial duties above referred to, we cannot pronounce them to be repugnant to the organic law and void. We should not feel ourselves justified in deciding that the legislative assembly possessed no power to provide for the appointment of supreme court commissioners and confer upon them the authority to allow a writ of *certiorari* to a justice of the peace.

For these reasons, the judgment of the district court of Iowa county, quashing the *certiorari* in this case, must be reversed, with an order to said court to restore the cause to the docket of said court.