PER CURIAM.
Last April a district court enjoined the application of 2011 Wis. Act 23, which requires a photo ID for voting, even though Wisconsin’s law is comparable to Indiana’s, which the Supreme Court upheld in Crawford v. Marion County Election Board, 553 U.S. 181, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008). After the district court’s decision, the Supreme Court of Wisconsin reversed two similar injunctions issued by state courts but ordered state officials to make it easier for registered voters to obtain documentation (such as birth certificates) that they may need to obtain photo IDs, or to waive the documentation requirement if obtaining birth certificates proves difficult or expensive. League of Women Voters v. Walker, 2014 WI 97, 851 N.W.2d 302 (July 31, 2014); Milwaukee Branch of NAACP v. Walker, 2014 WI 98, 851 N.W.2d 262 (July 31, 2014). With the state injunctions lifted, Wisconsin asked us to stay the federal injunction so that it could use the photo ID requirement in this fall’s election. After receiving briefs and hearing oral argument on the merits of the state’s appeal, we granted the motion for a stay. Plaintiffs ask us to reconsider that decision.
When a court is asked to issue a stay, the first and most important question is whether the applicant has made a strong *496 showing that it is likely to succeed on the merits. See, e.g., Nken v. Holder, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). We thought this standard satisfied, given Crawford, League of Women Voters, and Milwaukee Branch of NAACP. None of these decisions is dispositive, because the district judge made findings of fact different from those that the Supreme Court of the United States and the Supreme Court of Wisconsin had before them. But those decisions give Wisconsin a strong prospect of success on appeal.
A second important consideration is the public interest in using laws enacted through the democratic process, until the laws’ validity has been finally determined. This is the view the Supreme Court has taken in the same-sex-marriage cases now before it. Even after federal courts held some states’ laws invalid, the Court issued stays so that the laws remain in effect pending final resolution. See McQuigg v. Bostic, No. 14A196, — U.S. -, 135 S.Ct. 32, 189 L.Ed.2d 884, 2014 WL 4096232 (S.Ct. Aug. 20, 2014); Herbert v. Evans, No. 14A65, — U.S.-, 135 S.Ct. 16, 189 L.Ed.2d 868, 2014 WL 3557112 (S.Ct. July 18, 2014). This court has followed the same approach for Wisconsin’s and Indiana’s marriage laws. After holding them unconstitutional, see Baskin v. Bogan, No. 14-2386, 766 F.3d 648, 2014 WL 4359059 (7th Cir. Sept. 4, 2014), we nonetheless issued stays so that they could remain in force pending final decision by the Supreme Court. Our panel concluded that Wisconsin’s photo ID law should be handled in the same way. Indiana has required photo ID at every election since 2005; it is hard to see why Wisconsin cannot do the same, while the validity of its statute remains under review.
Plaintiffs’ motion for reconsideration asserts that the stay “imposes a radical, last-minute change” in election procedures and “virtually guarantees substantial chaos”, contrary to decisions such as Purcell v. Gonzalez, 549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006). Plaintiffs tell us that the state’s election officials will be unable to prepare properly during the 53 days between the stay (September 12, 2014) and the next election (November 4, 2014). This overlooks the fact that the state’s election officials themselves asked for the stay. Whether 53 days (more than seven weeks) is long enough to make changes is a question of fact on which the record in this litigation is silent. Plaintiffs have offered their beliefs, which undoubtedly are sincerely held, but not evidence.
Act 23 was enacted in May 2011, and only persons with photo ID were allowed to vote in the February 2012 primary election. The procedures having been formulated, and voters having had time to get qualifying IDs, the state would have continued to enforce Act 23, but for two injunctions (since reversed) issued by state judges after the February 2012 primary. Wisconsin therefore is not starting from scratch in September 2014. It would be extraordinary for a federal court to tell state officials that they are forbidden to implement a state law, just because federal judges predict that they will turn out to be wrong in thinking that 7+ weeks, plus work done between May 2011 and the district court’s injunction in April 2014, is enough.
The stay this court has issued does not “impose” any change. It lifts a federal prohibition and permits state officials to proceed as state law allows or requires. Our order of September 12 was explicit: “The State of Wisconsin may, if it wishes (and if it is appropriate under rules of state law), enforce the photo ID requirement in this November’s elections.” If seven weeks is too short, then state officials need not make any change; nothing *497 has been “imposed” on them. Whether to use the photo ID requirement, in the absence of a federal injunction, is a matter of state law, for determination by Wisconsin’s executive and judicial branches. Wisconsin could decide, for example, that it would be too cumbersome to implement the change with respect to this year’s absentee ballots, but not with respect to live voting in November. Our decision does not foreclose such a possibility.
Purcell, on which plaintiffs rely, dealt with a judicial order, issued less than five weeks before an election, forbidding use of Arizona’s voter ID requirement. Without giving reasons, the Ninth Circuit required a state to depart from procedures established by state law; the Supreme Court held this to be improper. (The court of appeals later held that Arizona’s ID requirement is valid, reinforcing the conclusion that it had been a mistake to enjoin it. See Gonzalez v. Arizona, 677 F.3d 383, 404-10 (9th Cir.2012) (en banc).) In this case, by contrast, the court has not compelled the state to do anything; instead it has permitted the state to enforce a statute that the state tells us it wants (and is able) to enforce. There is a profound difference between compelling a state to depart from its rules close to the election (Purcell) and allowing a state to implement its own statutes (this case).
According to plaintiffs, equitable considerations favor leaving the injunction in force because many voters who today lack acceptable photo IDs will be unable to get them before November’s election. Yet Act 23 was enacted in May 2011. Voters in Wisconsin who did not already have a document that Wisconsin accepts (a driver’s license, for example) have had more than three years to get one. The statute gave voters eight months to acquire necessary documents before Act 23’s first implementation (in the February 2012 primary); a further two years and nine months will have passed by this fall’s election.
The district judge did not find that any particular number of registered voters in Wisconsin has tried, but been unable, to obtain one of the several kinds of photo ID that Wisconsin will accept at the polls. The judge did observe that eight persons testified that they had tried and failed but did not decide whether their experience is representative, or even whether their testimony was accurate. After the district court’s decision, the Supreme Court of Wisconsin fixed the problems these eight said they had encountered. The number of registered voters without a qualifying photo ID (which the judge estimated at 300,000, or 9% of the 3,318,000 total) thus appears to reflect how many persons have not taken the necessary time, rather than a number of persons who have been disfranchised. We do not apply the label “disfranchised” to someone who has elected not to register, even though that step also requires an investment of time. In Wisconsin approximately 78% of those eligible have registered to vote, and approximately 74% of those who did register cast votes in the last presidential election. Both figures are lower than the 91% who already possess acceptable photo IDs, yet no one infers from the 78% registration proportion or the 74% voting proportion that Wisconsin has disfranchised anyone.
Crawford concluded that requiring would-be voters to spend time to obtain photographic identification does not violate the Constitution. “For most voters who need them, the inconvenience of making a trip to the [department of motor vehicles], gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting.” 553 U.S. at 198, 128 S.Ct. 1610. *498 The burden of getting a photo ID in Wisconsin is not materially different from the burden that Crawford deemed acceptable.
The motion for reconsideration is denied.
A judge called for a vote on the request for a hearing en banc. That request is denied by an equally divided court. Chief Judge Wood and Judges Posner, Rovner, Williams, and Hamilton voted to hear this matter eñ banc.