STATE EX REL. SMALL, Respondent, vs. BOSACKI, Appellant.

*September 18—October 7, 1913.*

*Elections: Qualifications of voters: Residence: Constitutional law.*

1. Under sub. 4, sec. 69, Stats., members of a logging crew who had no intention of remaining in the town in which their camp was located longer than the logging job lasted, did not gain a residence in such town and hence were not entitled to vote in a town election, although they were citizens of the state, were unmarried, had no other place which they claimed as a home, and ate, slept, and kept their clothing in the logging camp.

2. The legislature may prescribe reasonable rules and regulations for the exercise of the elective franchise.

APPEAL from a judgment of the circuit court for Oneida county: BYRON B. PARK, Judge. *Affirmed.*

Action of *quo warranto* to try defendant's title to the office of clerk of the town of Minocqua for the year 1912. The trial court found that at the town election of April 2, 1912, the relator and defendant were opposing candidates for the office of town clerk for the ensuing year; that 257 votes were cast for said office, 131 of which were cast for the defendant and 126 for the relator; that the board of canvassers made a statement of the canvass of said election in accordance with the votes cast as above stated, and declared the defendant duly elected to the office of town clerk of said town for the ensuing year; that he entered into possession of said office and has

ever since occupied and does now occupy the same. It further found that fifteen persons, naming them, cast their votes for the defendant and were counted for him; that said fifteen persons were unmarried and had no permanent residence at any place; that each of them was in the town of Minocqua at the time of said election living in a logging camp; that they went into said town in the fall of 1911 for the sole purpose of engaging in the business of logging and were employed there solely for that purpose; that they went into said town with the intention of staying there so long as their job of logging lasted, and with the intention of going elsewhere as soon as said job was finished or camp should be broken in the spring of 1912, and that none of said persons went into said town with the intention of becoming permanent residents thereof. The court also found that one nonresident voted for the relator.

As conclusions of law the court held that one illegal vote was cast for the relator and fifteen illegal votes were cast for the defendant; that the relator was duly elected and was and is entitled to the office; that the defendant has unlawfully usurped and intruded into said office and unlawfully holds the same from the relator. From a judgment of ouster entered accordingly the defendant appealed.

For the appellant there was a brief by *Kreutzer, Bird, Rosenberry & Okoneski,* and oral argument by *C. B. Bird.*

For the respondent there was a brief by *Miller & Reevs,* attorneys, and *F. J. Smith,* of counsel, and oral argument by *Mr. Smith.*

VINJE, J. It is claimed the trial court erred in finding that the presence of the fifteen men in the town of Minocqua was solely for the purpose of logging and not as permanent residents of the town; and in holding that they were not legal voters of the town.

No extended discussion of the evidence is necessary to show that the trial judge correctly found that the men in

question were not permanent residents of the town. True, they were all unmarried, had no other place which they claimed as a home, and ate, slept, and kept their clothing in the logging camp. But they had no intention of remaining in the town longer than their logging job lasted. In fact, they were typical *lumberjacks* of northern Wisconsin whose "home" followed their "turkey." Such men have no place of residence within any legal acceptation of the term.

Upon the second question a very long and persuasive argument is made by appellant to the effect that men circumstanced as these men were should not be disfranchised. For if they cannot vote where they work, at election time, they cannot vote at all. They were citizens of the state, and it is claimed their privilege to vote is a constitutional one, beyond the power of legislative or judicial impairment, citing *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 128 N. W. 1041, and *State ex rel. Hunt v. Stafford,* 120 Wis. 203, 97 N. W. 921, 1043. Our attention is also called to the rule announced by McCrary on Elections (4th ed.), sec. 105, based upon the case of *Cessna v. Meyers,* Smith, Elec. Cases, 60, wherein it is held that under certain circumstances transient workmen would be allowed to vote where they work, and to the cases of *Kreitz v. Behrensmeyer,* 125 Ill. 141, 17 N. E. 232, and *Welsh v. Shumway,* 232 Ill. 54, 83 N. E. 549, where like rules were applied. We deem, however, that we are foreclosed from deciding this question on judicial authority by the fourth subdivision of sec. 69, Stats. 1911, which prescribes the rules for determining residence as a qualification to vote and declares that they shall govern so far as applicable. The subdivision reads: "A person shall not be considered to have gained a residence in any town, ward or village of this state into which he shall have come for temporary purposes merely." This rule declares the public policy of the state with reference to the right of transient workmen to vote where they work. That it is founded upon considerations that conduce to preserve the lawful exercise of the ballot and the right

of self-government in local matters to the permanent residents of each locality, is plain. That, in view of the great number of transient workmen in many parts of the state, especially in the sparsely settled northern forest countries, there was an urgent necessity for such legislative declaration, is equally plain to any one conversant with conditions in that part of the state. Such a rule disfranchises no one. Every person can fix his own residence provided he makes it reasonably permanent by intending to return thereto when a temporary job is finished. The rule works no greater hardship on lumbermen or other transient workmen than it does on many other voters of the state. It would no doubt be a great convenience and save expense to many persons desiring to vote to be permitted to do so where they are on election day and have been for ten days prior thereto. But such a privilege would practically render it impossible in many cases to adequately guard the rightful exercise of the elective franchise or protect the interests of local communities where for the time being a great number of transient workmen may be. Sound public policy dictates that such mere transient sojourners in a town, who usually have no interest in an economical local government, or any adequate knowledge of local conditions and candidates for office, should not be permitted to control the result of an election therein, or to override the will of a great majority of the permanent residents who have to pay the taxes for the support of their government.

It is competent for the legislature to prescribe reasonable rules and regulations for the exercise of the elective franchise. To do so infringes upon no constitutional rights. It is because of the sacredness of the lawful use of the ballot, and of its importance in governmental affairs, that the right as well as the duty is vested in the legislature to prescribe reasonable rules and regulations under which it may be exercised. Such rules and regulations tend to certainty and stability in government and render it possible to guard against corrupt

and unlawful means being employed to thwart the will of those lawfully entitled to determine governmental policies. Their aim is to protect lawful government, not to needlessly harass or disfranchise any one.

The cases of *State ex rel. Bell v. Conness,* 106 Wis. 425, 82 N. W. 288, and *State ex rel. Hallam v. Lally,* 134 Wis. 253, 114 N. W. 477, inferentially at least, support the conclusion of the trial court that the fifteen votes in question were unlawfully cast for the defendant.

*By the Court.*—Judgment affirmed.