PATIENCE DRAKE ROGGENSACK, J.
¶ 1. We review a decision of the court of appeals[1] reversing an order of the circuit court[2] that declared portions of Wisconsin's voter identification law, 2011 Wis. Act 23, unconstitutional and permanently enjoined its enforcement.
¶ 2. Plaintiffs, the League of Women Voters of Wisconsin Education Network, Inc., and its president, Melanie G. Ramey,[3] bring a facial challenge to the law *365 under the Wisconsin Constitution.[4] The League asserts that the legislature lacked authority to require an elector to present Act 23-acceptable photo identification. It makes the following three arguments: (1) the requirement is an additional elector qualification not listed in Article III, Section 1; (2) the requirement is not one of the five types of election-related laws in Article III, Section 2; and (3) the requirement is not reasonable.
¶ 3. Defendants[5] counter that Act 23 does not create an additional elector qualification, but rather, requiring voters to present Act 23-acceptable photo identification is a means to identify qualified voters. They also say that Act 23 comes within the parameters of Article III, Section 2 of the Wisconsin Constitution as a law providing for registration of voters. Defendants further contend that Act 23 is a reasonable regulation that serves the State's significant interests in promoting voter confidence in the integrity of elections, in deterring voter fraud and in orderly election administration.
¶ 4. We conclude that the legislature did not exceed its authority under Article III of the Wisconsin Constitution when it required electors to present Act 23-acceptable photo identification. Since 1859, we have held that "it is clearly within [the legislature's] province to require any person offering to vote[] to furnish such *366 proof as it deems requisite [] that he is a qualif[i]ed elector." Cothren v. Lean, 9 Wis. 254 (*279), 258 (*283-84) (1859). Requiring a potential voter to identify himself or herself as a qualified elector through the use of Act 23-acceptable photo identification does not impose an elector qualification in addition to those set out in Article III, Section 1 of the Wisconsin Constitution.
¶ 5. We also conclude that the requirement to present Act 23-acceptable photo identification comes within the legislature's authority to enact laws providing for the registration of electors under Article III, Section 2 because Act 23-acceptable photo identification is the mode by which election officials verify that a potential voter is the elector listed on the registration list.
¶ 6. Finally, we conclude that plaintiffs facial challenge fails because Act 23's requirement to present photo identification is a reasonable regulation that could improve and modernize election procedures, safeguard voter confidence in the outcome of elections and deter voter fraud. See Crawford v. Marion Cnty. Election Bd., 553 U.S. 181, 191 (2008). Accordingly, we affirm the decision of the court of appeals.[6]
I. BACKGROUND
¶ 7. We begin with a description of the portions of Act 23 that bear on our analysis. Act 23 requires an elector to present one of nine acceptable forms of *367 photo identification in order to vote. Wis. Stat. § 5.02(6m) (2011-12).[7] Generally stated, these include: Wisconsin Department of Transportation (DOT) issued driver's license; DOT issued photo identification card; United States uniformed service identification card; United States passport; United States naturalization certificate issued within two years preceding the election; federally recognized Wisconsin Native American tribe's identification card; Wisconsin university or college student identification card; and a citation or notice of driver's license suspension.
¶ 8. Act 23's presentation requirement applies to in-person as well as absentee voting, with some exceptions for, among others, electors who automatically receive absentee ballots under Wis. Stat. § 6.86(2)(a), residents of qualified facilities described in Wis. Stat. § 6.875(1) and military and overseas electors under Wis. Stat. § 6.865(1). § 6.87(4)(b)2., 3., and 5.
¶ 9. If an elector does not present Act 23-acceptable identification on the day of the election in which he or she offers to vote, the elector may cast a provisional ballot. However, the provisional ballot will be counted only if the elector presents Act 23-acceptable identification at the polling location before 4:00 p.m. on the day of the election or at the office of the municipal clerk or board of election commissioners by the following Friday. Wis. Stat. § 6.97(3).
¶ 10. Four months after Governor Walker signed Act 23 into law, the League filed this lawsuit seeking a declaration that the photo identification requirement violated Article III of the Wisconsin Constitution and asking for injunctive relief. After denying defendants' *368 motion to dismiss for lack of standing, the circuit court granted the League's motion for summary judgment. The circuit court concluded that the challenged portions of Act 23 were "unconstitutional to the extent they serve [d] as a condition for voting at the polls" and permanently enjoined defendants "from any further implementation or enforcement of those provisions."
¶ 11. The court of appeals reversed the circuit court, concluding that: (1) the League had "not shown that the photo identification requirement is on its face an 'additional qualification' for voting"; (2) Act 23 was validly enacted pursuant to the legislature's "implicit but broad constitutional authority to establish a voting registration system under which election officials may require potential voters to identify themselves as registered voters"; and (3) that there were no factual findings in the record to support the League's implied argument that the photo identification requirement was so burdensome that it effectively denied people the right to vote.[8] The League petitioned for review, which we granted.
II. DISCUSSION
¶ 12. The League brings a facial constitutional challenge against Act 23, asserting that the requirement to present an Act 23-acceptable photo identification creates an elector qualification in addition to those set out in Article III, Section 1 of the Wisconsin Constitution, which the legislature has no power to do; that Act 23 exceeds the scope of legislative authority *369 authorized by Article III, Section 2 of the Wisconsin Constitution; and Act 23 is not a reasonable regulation of the elective franchise.
A. Standard of Review
¶ 13. There are two general types of constitutional challenges: facial and as-applied. As we explained in State v. Wood, 2010 WI 17, 323 Wis. 2d 321, 780 N.W.2d 63:
A party may challenge a law ... as being unconstitutional on its face. Under such a challenge, the challenger must show that the law cannot be enforced "under any circumstances."... In contrast, in an as-applied challenge, we assess the merits of the challenge by considering the facts of the particular case in front of us, "not hypothetical facts in other situations." Under such a challenge, the challenger must show that his or her constitutional rights were actually violated.
Id., ¶ 13 (internal citations omitted).
¶ 14. The League presents only a facial challenge to Act 23, asserting that the photo identification requirement is void from its inception. The constitutionality of a statute is a question of law that we independently review, while benefitting from the analyses of the circuit court and court of appeals. State v. Smith, 2010 WI 16, ¶. 8, 323 Wis. 2d 377, 780 N.W.2d 90.
B. Constitutional Challenge
1. Foundational principles
¶ 15. Because the League brings a facial challenge to Act 23, it "must show that the law cannot be enforced 'under any circumstances.'" Wood, 323 Wis. 2d 321, *370 ¶ 13 (citing Olson v. Town of Cottage Grove, 2008 WI 51, ¶ 44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211); see also United States v. Salerno, 481 U.S. 739, 745 (1987) (explaining that a facial challenge to a legislative act is the most difficult of constitutional challenges because the challenger must prove that "no set of circumstances exists under which the Act would be valid").
¶ 16. We generally presume that statutes are constitutional. Tammy W-G. v. Jacob T., 2011 WI 30, ¶ 46, 333 Wis. 2d 273, 797 N.W.2d 854. However, the way in which we address this presumption may vary depending on the nature of the constitutional claim at issue. See e.g., Milwaukee Branch of NAACP v. Walker, 2014 WI 98, ¶¶ 27-41, _ Wis. 2d _, 851 N.W.2d 262, also released today. The presumption of constitutionality is based on respect for a co-equal branch of government, and it promotes due deference to legislative acts. Dane Cnty. Dep't of Human Servs. v. Ponn P, 2005 WI 32, ¶ 16, 279 Wis. 2d 169, 694 N.W.2d 344. This presumption applies even when a statute implicates a fundamental right, subject to limited exceptions that do not apply here. State v. Cole, 2003 WI 112, ¶¶ 14, 20, 264 Wis. 2d 520, 665 N.W.2d 328 (presuming that a concealed weapons law implicating the fundamental right to bear arms was constitutional). "[I]f any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality." Aicher v. Wis. Patients Comp. Fund, 2000 WI 98, ¶ 18, 237 Wis. 2d 99, 613 N.W.2d 849.
¶ 17. The challenger has a very heavy burden in overcoming the presumption of constitutionality. Dowhower v. W. Bend Mut. Ins. Co., 2000 WI 73, ¶ 10, 236 Wis. 2d 113, 613 N.W.2d 557. To succeed, plaintiffs *371 must prove that the statute is unconstitutional beyond a reasonable doubt. Cole, 264 Wis. 2d 520, ¶ 11. While this burden of proof is often associated with the requisite proof of guilt in a criminal case, in the context of a challenge to the constitutionality of a statute, the phrase "beyond a reasonable doubt" expresses the "force or conviction with which a court must conclude, as a matter of law, that a statute is unconstitutional before the statute or its application can be set aside." Ponn P, 279 Wis. 2d 169, ¶ 18.
2. Suffrage
¶ 18. The qualifications of an elector entitled to vote are set out in Article III, Section 1 of the Wisconsin Constitution. Article III, Section 2 of the Wisconsin Constitution addresses implementation of voting rights through legislation. Those two sections are the focus of our review and they provide in their entirety:
Electors. Section 1. Every United States citizen age 18 or older who is a resident of an election district in this state is a qualified elector of that district.
Implementation. Section 2. Laws may be enacted:
(1) Defining residency.
(2) Providing for registration of electors.
(3) Providing for absentee voting.
(4) Excluding from the right of suffrage persons:
(a) Convicted of a felony, unless restored to civil rights.
(b) Adjudged by a court to be incompetent or partially incompetent, unless the judgment specifies that the person is capable of understanding the objective of the elective process or the judgment is set aside.
*372 (5) Subject to ratification by the people at a general election, extending the right of suffrage to additional classes.
3. Prior Article III challenges
¶ 19. The League's Article III challenge stands with many significant cases that have brought constitutional challenges to legislation that bears on voting. Accordingly, we now review some of those challenges. For example, in McGrael v. Phelps, 144 Wis. 1, 128 N.W. 1041 (1910), we concluded that voting was a right, not a privilege, which was guaranteed by Article III, Section 1 of the Wisconsin Constitution. Id. at 14-15. However, we also concluded that "there is a legitimate field of legislative activity in the nature of regulation." Id. at 2. In that regard, we explained:
It has become elementary that constitutional inhibitions of legislative interference with a right, including the right to vote and rights incidental thereto, leaves, yet, a field of legislative activity in respect thereto circumscribed by the police power. That activity appertains to conservation, prevention of abuse, and promotion of efficiency. Therefore, as in all other fields of police [power] regulation, it does not extend beyond what is reasonable.... However, what is and what is not reasonable, is primarily for legislative judgment, subject to judicial review.
Id. at 17-18. We noted that judicial review of the legislature's exercise of its police power addresses "whether the interference, from the standpoint of a legitimate purpose, can stand the test of reasonableness." Id. at 18.
¶ 20. In State ex rel. Small v. Bosacki, 154 Wis. 475, 143 N.W. 175 (1913), we examined a statute that established voter residency requirements upon a claim *373 that they limited the right to vote of those who worked in a district different from that in which they lived. Id. at 476. In upholding the law we said:
[T]he right as well as the duty is vested in the legislature to prescribe reasonable rules and regulations under which [the franchise] may be exercised. Such rules and regulations tend to certainty and stability in government and render it possible to guard against corrupt and unlawful means being employed to thwart the will of those lawfully entitled to determine governmental policies. Their aim is to protect lawful government, not to needlessly harass or disfranchise any one.
Id. at 478-79.
¶ 21. More recently in Gradinjan v. Boho, 29 Wis. 2d 674, 139 N.W.2d 557 (1966), we examined a statute that prohibited counting absentee ballots if they were not properly authenticated by a municipal clerk. We upheld the constitutionality of the statute, while explaining that, "the right of a qualified elector to cast his ballot for the person of his choice cannot be destroyed or substantially impaired. However, the legislature has the constitutional power to say how, when, and where his ballot shall be cast." Id. at 684-85 (quoting State ex rel. Frederick v. Zimmerman, 254 Wis. 600, 613, 37 N.W.2d 473 (1949)).
4. The League's Article III challenges
i. additional elector qualification
¶ 22. The League's major argument is that Act 23 is unconstitutional because being required to present Act 23-acceptable photo identification is an additional elector qualification beyond what is listed in Article III, Section 1 of the Wisconsin Constitution. As provided in *374 full above, Section 1 requires that an elector be a United States citizen, at least 18 years of age, a resident of Wisconsin and a resident of the district in which the elector offers to vote.
¶ 23. We agree with the League that the legislature cannot add to these qualifications for electors. As we explained in State ex rel. La Follette v. Kohler, 200 Wis. 518, 228 N.W. 895 (1930), "[t]he persons who may exercise the right of suffrage and the day of election are fixed by the constitution." Id. at 548. However, we also noted that "[t]hese provisions are not and were never intended to be self-executing or exclusive of regulation in other respects. . . . [T]he power to prescribe the manner of conducting elections is clearly within the province of the legislature." Id.
¶ 24. As we have explained, "the legislature has the constitutional power to say how, when, and where" elections shall be conducted. Frederick, 254 Wis. at 613. The mode and manner of conducting an election includes the legislature's ability "to require any person offering to vote, to furnish such proof as it deems requisite, that he is a qualified elector." Cothren, 9 Wis. at 258 (*283-84).
¶ 25. Although requiring any person offering to vote to identify that he or she is a qualified elector is a straightforward and longstanding proposition to which we have uniformly adhered, we briefly discuss two cases decided shortly after the ratification of the state constitution to illustrate the principle. The first is State ex rel. Knowlton v. Williams, 5 Wis. 308 (1856). The plaintiff in Knowlton challenged a vote to move the La Fayette County seat from Shullsburg to Avon. Id. at 309. Part of that act provided that "no person shall be deemed qualified to vote upon the question of the removal of the *375 county seat provided for in this act, unless he shall have resided in the town where he offers to vote at least thirty days." Id. at 309-10.
¶ 26. At that time, Article III provided that "[e]very male person of the age of twenty-one years or upwards, of the following classes, who shall have resided in this State for one year next preceding any election, shall be deemed a qualified elector." Wis. Const. Art. Ill, § 1 (1848). None of the subsequent classes added further residency requirements. Futhermore, unlike the present version of Article III, the original state constitution did not grant the legislature the authority to define residency. As such, we concluded that the law's 30-day residency requirement constituted an additional elector qualification that the legislature was not empowered to impose. Knowlton, 5 Wis. at 311.[9]
¶ 27. The second case, Cothren, involved another challenge to a vote to move a county seat. Cothren, 9 Wis. 254 (*279). Plaintiffs disputed the results of the vote based on a challenge to a law that permitted election officials to question a voter whose qualifications to vote were challenged. Id. at 257-58 (*283). Specifically, the law allowed election officials to ask an elector "a series of questions . . . calculated to draw out from such person the truth as to whether such cause of challenge existed against him or not." Id. at 258 (*283).
¶ 28. Article III made (and still makes) no mention of the requirement that an elector answer questions or identify himself or herself. Nonetheless, we upheld the law with reasoning similar to Knowlton, *376 concluding that "instead of prescribing any qualifications for electors different from those provided for in the constitution, [the law] contain[ed] only new provisions to enable the inspectors to ascertain whether the person offering to vote possessed the qualifications required by [the constitution]." Id. Stated otherwise, requiring an elector to demonstrate his or her constitutional qualifications to vote does not constitute an additional elector qualification.
¶ 29. The League agrees that the legislature has the authority to pass laws that allow election officials to ascertain whether a potential voter possesses the constitutional qualifications required of an elector. As the League acknowledges, this includes the ability to require a potential voter to identify himself or herself in some fashion, thereby answering the question, "Are you who you say you are, a constitutionally qualified elector?"
¶ 30. The focus of the League's argument is that Act 23's presentation requirement goes beyond such authority because it "bars constitutionally qualified voters from voting." This argument fails for several reasons.
¶ 31. First, as the court of appeals noted, under the League's proposed logic, "virtually any requirement placed on voters would be an unconstitutional and impermissible additional 'qualification.'" League of Women Voters of Wis. Educ. Network, Inc. v. Walker, 2013 WI App 77, ¶ 66, 348 Wis. 2d 714, 834 N.W.2d 393. Stated otherwise, if the League were correct, mode and manner requirements for voting would not be permissible because the State could not enforce them.
¶ 32. Second, and more important, the League's argument fails under Cothren, which similarly prohibited a constitutionally qualified elector from voting *377 because he refused to identify himself by answering a series of questions. Notwithstanding Cothren, the League now makes the same argument we flatly rejected in that case:
It is true that § 14 provides that if any person challenged refused to answer, his vote should be rejected. But does that make the answering of the questions a new qualification for a voter? Certainly not. Under the law, as it before existed, any one whose vote was challenged had to take an oath that he possessed the qualifications required by the constitution. If he refused, his vote was rejected. But this did not make the taking of the oath a new qualification, so as to invalidate the law. It was rejected only because he failed to furnish the proof required by law, showing his right to vote.
Cothren, 9 Wis. at 258-59 (*284).[10] As such, that an elector must comply with Act 23 in order to vote cannot reasonably be said to impose an additional elector qualification.
¶ 33. This conclusion is bolstered by other ways in which an elector who fails to comply with indisputably valid election laws can lose the opportunity to vote. For example, an elector who fails to arrive at a polling location on time can lose his right to vote in that election. Therefore, although the elector is a United States citizen, over the age of 18, and a resident of the election district in which he or she offers to vote, if the elector does not arrive at a polling place between the *378 hours of 7 a.m. and 8 p.m., and is not voting absentee, the elector may lose his right to vote in that election. Wis. Stat. § 6.78(4). The same holds true for an elector who fails to arrive at the correct polling place. Wis. Stat. § 6.77(1). Yet none of these laws that affect the manner of voting can be seriously characterized as additional elector qualifications.
¶ 34. Moreover, we note that Act 23 has a safeguard for electors who do not present an acceptable form of identification when offering to vote. In that instance, an elector may cast a provisional ballot. Wis. Stat. § 6.97. If the elector presents an acceptable form of identification by 4 p.m. on the Friday after the election, his or her vote will be counted. § 6.97(3)(b).
¶ 35. For these reasons, we conclude that being required to present Act 23-acceptable photo identification prior to voting is not an elector qualification in addition to those set out in Article III, Section 1 of the Wisconsin Constitution; but rather, it is a mode of identifying those who possess constitutionally required qualifications.
¶ 36. Our decision is this regard is supported by the decisions of courts in other jurisdictions that have considered whether the requirement of presenting photo identification prior to voting is an additional elector qualification. For example, in City of Memphis v. Hargett, 414 S.W.3d 88 (Tenn. 2013), the Tennessee Supreme Court considered the same constitutional challenge the League presents to us. Id. at 108. The court began by reviewing the Tennessee Constitution, which required that "one must be at least eighteen years of age, a United States citizen, a Tennessee resident... and registered to vote." Id.
*379 ¶ 37. In rejecting the contention that the photo identification requirement imposed by the Tennessee law was an additional voter qualification, the court concluded that "the photo ID requirement is more properly classified as a regulation pertaining to an existing voting qualification." Id. at 109. The court explained that photo identification was merely a "mode of ascertaining" whether the potential voter possessed the necessary constitutional qualifications to vote. Id. (quoting Trotter v. City of Maryville, 235 S.W.2d 13, 19 (Tenn. 1950)) (further citation omitted).
¶ 38. In Democratic Party of Ga., Inc. v. Perdue, 707 S.E.2d 67 (Ga. 2011), the Georgia Supreme Court addressed whether requiring the presentation of government-issued photo identification to identify qualified voters was an additional voter qualification. The court explained that the right to vote is guaranteed by the Georgia Constitution, and it cannot be denied or taken away by legislative enactment. Id. at 72. However, the legislature may prescribe "reasonable regulations as to how these qualifications shall be determined." Id. Thereafter, the court concluded that photo identification was "a reasonable procedure for verifying that the individual appearing to vote in person is actually the same person who registered to vote." Id.
¶ 39. In League of Women Voters of Ind., Inc. v. Rokita, 929 N.E.2d 758 (Ind. 2010), the Indiana Supreme Court rejected the additional qualification contention that is made by the League before us. The court first explained that the legislature could "not by statutory enactment add a substantive qualification to the right to vote." Id. at 767. However, the court further explained that"[Requiring qualified voters to present a specified form of identification is not in the nature of such a personal, individual characteristic or attribute *380 but rather functions merely as an election regulation to verify the voter's identity." Id.
¶ 40. Although none of the state constitutions is word for word identical with Article III, Section 1 of the Wisconsin Constitution, the reasoning of all three supreme courts is consistent with our own set out above. Accordingly, we now turn to Article III, Section 2, which expressly permits the legislature to provide for registration of voters.
ii. registration
¶ 41. In addition to the authority to "require any person offering to vote[] to furnish such proof as it deems requisite^ that he is a qualif[i]ed elector," Cothren, 9 Wis. at 258 (*283-84), the legislature may pass five types of election-related laws pursuant Article III, Section 2 of the Wisconsin Constitution. One of those enumerated types are laws that "[p]rovid[e] for registration of electors." Wis. Const. Art. Ill, § 2(2).
¶ 42. The court of appeals succinctly summarized the current registration system as follows:
Election officials compile registration information into "poll lists" for use at polling places, containing "the full name and address of each registered elector." Wis. Stat. § 6.36(2) (2009-10); Wis. Stat. § 6.36(2). Thus, poll lists memorialize who is registered to vote in a given election in a given voting district and they play a critical role in the voting process both pre- and post-Act 23. When a potential voter arrives at the polling place for his or her residence in a given election, he or she "shall state his or her full name and address" to election officials, who "shall verify that the name and address" provided match the name and address on the poll list. Wis. Stat. § 6.79(2)(a) (2009-10); Wis. Stat. § 6.79(2)(a).
*381 League of Women Voters, 348 Wis. 2d 714, ¶ 15 (footnote omitted).
¶ 43. Requiring an elector to identify himself or herself by stating his or her full name and address is unquestionably part of the registration process. After all, there would be no point to compiling a list of registered electors if there were no means by which to ascertain if the person offering to vote was an elector appearing on the list. Identification of registered voters by a government-issued photo identification is the mode of identification that the legislature has chosen.
¶ 44. Based on the League's arguments before us, we can see no meaningful grounds on which to distinguish the photo identification requirement from the requirement that an elector state his or her full name and address in order to verify that it matches the registration list. Both requirements permit use of registration lists to verify at the polling place that the potential voter is registered. An elector who fails to comply with either procedure cannot vote. Furthermore, the League does not rely on the difficulty and inconvenience of procuring an Act 23-acceptable form of identification.[11] Therefore, the ease with which most electors will be able to state their names and addresses is not relevant to our decision in this case.
*382 ¶ 45. We now address the League's remaining argument, that Act 23 fails an independent reasonableness requirement.
iii. reasonableness
¶ 46. According to the League, even laws that do not constitute an additional qualification under Article III, Section 1 or that come within one of the five types of election-related laws under Article III, Section 2 must be "reasonable" to pass constitutional muster. Act 23 fails this requirement, according to the League, because "it destroys the right of a qualified elector to cast a ballot" and "it does nothing to preserve and promote the constitutional right to vote."
¶ 47. We acknowledge that in upholding various election regulations we have couched some of our decisions in terms of "reasonableness." E.g., McGrael, 144 Wis. at 17-18 (explaining that laws regulating voting methods are enacted through the legislature's use of police power, and accordingly, they must be reasonable exercises of that power). Therefore, in order to meet the League's argument, we assume without deciding, that reasonableness functions as an independent limit on election regulation.
¶ 48. In State ex rel. Van Alstine v. Frear, 142 Wis. 320, 125 N.W. 961 (1910), we considered a challenge to statutorily established primary elections. Id. at 322-23. In addressing the claim that the election regulation bore unconstitutionally on the right to assemble, we explained that "[s]uch rights have always been held to be subject to reasonable regulation." Id. at 337 (citing Freund, Police Power, § 480; further citations omitted). We noted that "[s]uch regulations, within reasonable limits, strengthen and make effective the constitutional *383 guaranties instead of impairing or destroying them." Id. (quoting State ex rel. Runge v. Anderson, 100 Wis. 523, 533-34, 76 N.W. 482 (1898)).
¶ 49. Accordingly, given our discussions of the use of police power when enacting laws bearing on elections, we understand the League's argument to be that when the legislature regulates elections, its use of police power is limited to legislation that does not destroy or impair, but rather, preserves and promotes the right to vote. Stated otherwise, if the legislation does not do so, it is "unreasonable."
¶ 50. While we agree with the League that election laws must not destroy or impair the right to vote, Act 23's presentation requirement does not do so. As we explained in part above, requiring a potential voter to identify himself or herself with government-issued photo identification does not destroy or impair the right to vote. Identification by the use of Act 23-acceptable photo identification is the mode of ascertaining that the potential voter is a constitutionally qualified elector. Because the legislature has the power to regulate in ways that affect the mode and manner of conducting elections and Act 23-acceptable photo identification is a mode of ascertaining the identity of electors, it is reasonable. See Kohler, 200 Wis. at 548; Frederick, 254 Wis. at 613; Cothren, 9 Wis. at 258 (*283-84).
¶ 51. Furthermore, we have little trouble concluding that Act 23's presentation requirement is a law that could "strengthen and make effective the constitutional guarant[y]" of suffrage. See Runge, 100 Wis. at 534. In a more recent context, in Crawford, the United States Supreme Court concluded that voter identification laws serve unquestionably legitimate purposes: (1) "safeguarding voter confidence"; (2) "im *384 proving] and modernizing] election procedures"; and (3) "deterring and detecting voter fraud." Crawford, 553 U.S. at 191. Each of these purposes is reasonable precisely because it could preserve and promote the right to vote.
¶ 52. For instance, photo identification could enhance the integrity of elections because "[t]he electoral system cannot inspire public confidence if no safeguards exist... to confirm the identity of voters." Id. at 194 (quoting Report of the Commission on Federal Election Reform, Building Confidence in U. S. Elections § 2.5 (Sept. 2005)). Increased confidence in the elector system, in turn, "encourages citizen participation in the democratic process." Id. at 197.
¶ 53. Also, the presentation of photo identification "is to some extent, a condition of our times. Many important personal interactions are being modernized to require proof of identity with photo identification." NAACP, 2014 WI 98, ¶ 44, _Wis. 2d _. Crawford also noted that the modern approach to identification is moving toward photo identification. Crawford, 553 U.S. at 192.
¶ 54. Additionally, voter identification laws could detect and deter fraud thereby ensuring that a constitutionally qualified elector's vote is not diluted by fraudulent votes.[12] This could preserve and promote the right to vote by assuring that a constitutionally *385 qualified elector's vote counts with full force and is not offset by illegal ballots. See Reynolds v. Sims, 377 U.S. 533, 555 (1964).
¶ 55. In areas such as election regulation, "[w]here a legislature has significantly greater institutional expertise," courts generally defer to legislative judgments. Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 402 (2000) (Breyer, J., concurring). Therefore, rather than "asking whether the statute burdens any one such interest in a manner out of proportion to the statute's salutary effects upon the others," courts employ a presumption of constitutionality. Id. In so doing, we decline to evaluate whether Act 23 is the best way to preserve and promote the right to vote, such "policy determinations . . . are not properly addressed to the members of the Supreme Court of Wisconsin." MTI v. Walker, 2014 WI 99, ¶ 181, _ Wis. 2d _, 851 N.W.2d 337 (Crooks, J., concurring). Instead, we conclude that Act 23 is a reasonable way to do so.
¶ 56. And finally, employing the presumption of constitutionality in the present case, we conclude that the League has failed to prove that presenting an Act 23-acceptable photo identification is unconstitutional beyond a reasonable doubt. Furthermore, Act 23's presentation requirement is a reasonable voter regulation that is supportive of the State's significant interests in promoting voter confidence in the outcome of elections, improving and modernizing election procedures and deterring voter fraud.
III. CONCLUSION
¶ 57. We conclude that the League has failed to prove Act 23 unconstitutional beyond a reasonable doubt. The legislature did not exceed its authority *386 under Article III of the Wisconsin Constitution when it required electors to present Act 23-acceptable photo identification. Since 1859, we have held that "it is clearly within [the legislature's] province to require any person offering to vote[] to furnish such proof as it deems requisite[] that he is a qualif[i]ed elector." Cothren, 9 Wis. at 258 (*283-84). Requiring a potential voter to identify himself or herself as a qualified elector through the use of Act 23-acceptable photo identification does not impose an elector qualification in addition to those set out in Article III, Section 1 of the Wisconsin Constitution.
¶ 58. We also conclude that the requirement to present Act 23-acceptable photo identification comes within the legislature's authority to enact laws providing for the registration of electors under Article III, Section 2 because Act 23-acceptable photo identification is the mode by which election officials verify that a potential voter is the elector listed on the registration list.
¶ 59. Finally, we conclude that plaintiffs' facial challenge fails because Act 23's requirement to present photo identification is a reasonable regulation that could improve and modernize election procedures, safeguard voter confidence in the outcome of elections and deter voter fraud. See Crawford, 553 U.S. at 191. Accordingly, we affirm the decision of the court of appeals.
By the Court. — The decision of the court of appeals is modified and as modified, affirmed; injunction vacated; cause remanded to circuit court to dismiss the complaint.

 League of Women Voters of Wis. Educ. Network, Inc. v. Walker, 2013 WI App 77, 348 Wis. 2d 714, 834 N.W.2d 393.

 The Honorable Richard G. Niess of Dane County presided.

 We refer to plaintiffs collectively hereinafter as "the League."

 Plaintiffs' challenge is based entirely on the requirement to present Act 23-acceptable photo identification to vote. It does not include any allegation that obtaining such photo identification places an unconstitutional burden on the right to vote.

 The defendants are Governor Walker and six members of the Government Accountability Board, all of whom are sued in their official capacities, and three individual voters who joined the suit at the court of appeals.

 The court of appeals remanded the case to the circuit court "for further proceedings consistent with this opinion as may be necessary." Because we conclude that plaintiffs' facial challenge to Act 23 fails as a matter of law, we modify the remand of the court of appeals, vacate the circuit court injunction and remand the matter to the circuit court to dismiss the lawsuit.

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 The League no longer asserts that Act 23 is so burdensome that it effectively denies the right to vote, noting that this issue is now before us in Milwaukee Branch of NAACP v. Walker, 2014 WI 98, _ Wis. 2d _, 851 N.W.2d 262.

 See also State ex rel. Cornish v. Tuttle, 53 Wis. 45, 50, 9 N.W. 791 (1881) (invalidating a village charter provision establishing a 20-day residency requirement in order to vote for municipal officers).

 See also Gradinjan v. Boho, 29 Wis. 2d 674, 682-83, 139 N.W.2d 557 (1966) (quoting Anderson v. Budzien, 12 Wis. 2d 530, 533-34, 107 N.W.2d 496 (1961)) ("To prevent fraud, the legislature in some instances has specifically stated that there must be strict compliance with a statute or a ballot cannot be counted.. . . [C]ompliance with those provisions is mandatory.").

 In NAACP, Act 23 was subjected to a very different challenge than that brought by the League. There, plaintiffs submitted evidence to develop their allegation that obtaining Act 23-acceptable photo identification imposed unconstitutional burdens of time, inconvenience and cost on the right to vote and that Act 23 was not reasonably necessary to effect a significant government interest. NAACP, 2014 WI 98, ¶ 2, _Wis. 2d _. Accordingly, we employed a more nuanced test, under which the severity of the burden on the right to vote dictates the level of scrutiny that is applied.

 A recent filing in Milwaukee County demonstrates that voter fraud is a concern. See State v. Monroe, 2014CF2625 (June 20, 2014), wherein the Milwaukee County District Attorney's office filed a criminal complaint against Robert Monroe that alleged 13 counts of voter fraud, including multiple voting in elections and providing false information to election officials in order to vote.