REBECCA GRASSL BRADLEY, J. (concurring).
¶68 I join the majority opinion. I write separately, however, to address the presumptions afforded a statute undergoing a constitutional challenge and the challenger's burden of proof. The Mayos bring both facial and as-applied challenges to the $750,000 cap on noneconomic damages for medical malpractice claimants prescribed by Wis. Stat. § 893.55 (2015-2016); that is, the Mayos assert the statute is unconstitutional in every circumstance and as applied specifically to them. See State v. Smith, 2010 WI 16, ¶ 10 n.9, 323 Wis. 2d 377, 780 N.W.2d 90 (discussing difference between facial and as-applied constitutional challenges). The burden to prove a statute unconstitutional rests with the party challenging it. For many years, this court has described that burden as a "heavy" one because the court presumes the legislation is constitutional, engages in every attempt to uphold it, and in a facial challenge, requires a party challenging a law to prove it "is unconstitutional beyond a reasonable doubt." Id., ¶ 8. To succeed in a facial challenge, a party must also show the law *698 cannot be enforced under any circumstances. State v. Wood, 2010 WI 17, ¶ 13, 323 Wis. 2d 321, 780 N.W.2d 63. I refer to these elements of the burden collectively as "the rule" and because it constitutes the current state of the law, I am bound to apply it.
¶69 Regardless of the hurdles the court compels challengers to surmount, a statute either comports with the constitution or it does not. Requiring a court to lend almost unfettered deference to the legislature seems incompatible with our duty of ensuring the legislature does not exceed its constitutional powers. Indeed, imposing a burden of proof heavily weighted in favor of the legislature on matters of constitutional interpretation is an abdication of our core judicial powers to exercise impartial judgment in cases and controversies and to say what the law is. See generally Gabler v. Crime Victims Rights Board, 2017 WI 67, ¶ 37, 376 Wis. 2d 147, 897 N.W.2d 384 (2017). "[T]he judiciary are to declare a legislative Act void which conflicts with the constitution, or else that instrument is reduced to nothing." James B. Thayer, The Origin and Scope of the American Doctrine of Constitutional Law, 7 Harvard L. Rev. 129, 139 (1893) (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 178, 2 L.Ed. 60 (1803) ).
¶70 Although I join the majority, I write separately to question the court's continued adherence to an evidentiary burden of proof when deciding a statute's constitutionality. Additionally, I write to clarify that the court's elimination of rational basis with bite as a standard of review should not be interpreted as relaxing the level of review applied to statutes implicating fundamental constitutional rights. I agree that it would be inappropriate to apply rational basis with bite in reviewing the statutory cap on non-economic damages, but I would preserve a meaningful standard of judicial review for laws encroaching on fundamental constitutional rights.
I
¶71 Under current law, we presume the statute in question is constitutional. Aicher v. Wis. Patients Comp. Fund, 2000 WI 98, ¶ 18, 237 Wis. 2d 99, 613 N.W.2d 849. We will decide otherwise only if a challenger proves the statute is unconstitutional beyond a reasonable doubt. Id., ¶ 19. A showing that the statute is "probably unconstitutional" or that its constitutionality is "doubtful" is insufficient to overcome the presumption. State v. Cole, 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W.2d 328.
¶72 A facial challenge requires near-absolute proof that any application of the statute is unconstitutional. But the "proof" required in such challenges is assuredly not evidentiary proof-it is a rather mixed bag of concrete and hypothetical proof sufficient to "establish[ ] the force or conviction with which a court must conclude, as a matter of law, that a statute is unconstitutional." Dane Cty. Dep't of Human Services v. Ponn P., 2005 WI 32, ¶ 18, 279 Wis. 2d 169, 694 N.W.2d 344.
II
¶73 Debate about the propriety of the presumption and burden traces back centuries, indeed to our nation's founding. See generally Thayer, supra ¶2, at 140 ("When did this rule of administration begin? Very early.") (tracing the history of heightened deference to legislative acts in the states and the federal system to the American Revolution). In the late 18th century through the 19th century, both federal and state courts grounded their approach to determining the constitutionality of a statute in deference to the legislature. Id. at 142-43 n.1 (collecting examples of this rule's application by the United States Supreme Court and state courts in Massachusetts, *699 New York, New Hampshire, Ohio, Louisiana, and Florida). Among the expressed rationales for such deference, courts uniformly agreed that heightened deference preserved the essential balance between the legislature's law-creating function and the judiciary's duty to "say what the law is." See id.
¶74 Arguing a case in a Massachusetts court, Daniel Webster identified a principal weakness of the rule, an argument that persists today:
[M]embers of the legislature sometimes vote for a law, of the constitutionality of which they doubt, on the consideration that the question may be determined by the judges. ... If ... the judge is to hold it valid because its unconstitutionality is doubtful, in what a predicament is the citizen placed! ... [I]f the question is not met and decided here [by the court] on principle, responsibility rests nowhere. ... Judicial tribunals are the only ones suitable for the investigation of difficult questions of private right.[1 ]
Such "double deference" threatens the Constitution because both branches punt the issue to the other: "While the courts are deferring to the legislature, the legislature in turn is deferring to the courts. By this ruse, any scrutiny of legislation to ensure it is within the just powers of a legislature is avoided." Randy E. Barnett, Our Republican Constitution: Securing the Liberty and Sovereignty of We the People 128 (2016).
¶75 Like many other states, Wisconsin courts employed the rule, although the rationale for its adoption was never fully articulated. As early as 1842, when Wisconsin remained a territory, the precursor to this court applied a different variation of the rule whereby "[t]o justify a court in declaring a law of the legislature unconstitutional, the case must be clear and manifest." Norton v. Rooker, 1 Pin. 195, 204 (1842) (emphasis added); see also Dickson v. State, 1 Wis. 122, 126 (1853) ("clearly"). Courts sometimes equivocated between requiring proof that was "clear and manifest" and today's rule requiring proof "beyond a reasonable doubt," often resulting in the two standards being equated. See, e.g., Smith v. Odell, 1 Pin. 449, 455 (1844) ("The judiciary is a co-ordinate branch of the government, and has a right to declare an act of the legislature void, when repugnant to the constitution, but it must be a very clear and unequivocal case to induce a court to pronounce an act of the legislature unconstitutional. When a judge is convinced that an act is unconstitutional, it is his duty to set it aside, but he must examine it with every legal intendment and presumption in favor of its validity. He is not to resort to a forced, rigid or doubtful construction of an act for the purpose of determining its unconstitutionality. Before the court will declare an act of the legislature unconstitutional, a case should be presented in which there is no rational doubt." (emphasis added) (citations omitted) ); see also Christopher R. Green, Clarity and Reasonable Doubt in Early State-Constitutional Judicial Review, 57 S. Tex. L. Rev. 169, 171 (2015) (suggesting that, in some instances, courts took the two standards and equated them "as alternative verbal formulations of the same rule").
¶76 In 1861, this court borrowed from the Michigan Supreme Court in expressing the rule as follows: "that to warrant us in declaring a statute unconstitutional, we should be able to lay our finger on the part of the constitution violated, and that the *700 infraction should be clear and free from a reasonable doubt." State ex rel. Chandler v. Main, 16 Wis. 398, 415 (1863) (quoting Tyler v. The People, 8 Mich. 320, 333 (1860) ). The precursor to "beyond a reasonable doubt" of "clear and free from a reasonable doubt" apparently was imported from a foreign jurisdiction.
¶77 In Wisconsin's early history, the presumption of constitutionality could, in theory at least, be rebutted. For example, this court opined that "[i]t follows, logically, that the legitimacy of legislative regulation ... must be tested with reference to appropriateness of ends sought to be attained and also of means to such ends." State ex rel. McGrael v. Phelps, 144 Wis. 1, 22, 128 N.W. 1041 (1910). In practice, successful rebuttal of the presumption is rare, particularly in facial challenges, which require the challenger to identify an unlimited number of circumstances to which the statute may apply and successfully show the law cannot be enforced in any of them.
¶78 In federal courts, judicial deference has waned in recent decades. "[T]he strength of the presumption [of constitutionality] has weakened. This weakening is suggested both by shifts in the language that the Court has used to describe the presumption and by the significant modern increase in the rate at which the Court has invalidated federal statutes." Edward C. Dawson, Adjusting the Presumption of Constitutionality Based on Margin of Statutory Passage, 16 U. Pa. J. Const. L. 97, 108 (2013). No United States Supreme Court case since 1984 has applied a strong presumption of constitutionality in challenges to federal statutes. Id. at 109, n.43 ("[W]hile there are nine majority decisions between 1931 and 1984 describing the presumption of constitutionality afforded federal statutes as 'strong,' ... no majority decisions since 1984 mention a 'strong' presumption of constitutionality").[2] The rule seems to have essentially disappeared from United States Supreme Court jurisprudence. Id. ("The 'beyond a reasonable doubt' formulation has disappeared."). Our court of appeals noted this in Guzman v. St. Francis Hosp., Inc., 2001 WI App 21, ¶ 4 n.3, 240 Wis. 2d 559, 568, 623 N.W.2d 776, but lacking the power to overrule this court's precedent, it was compelled to apply the rule.
¶79 In its place, the United States Supreme Court sometimes employs a "plain showing" standard of review: "Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." United States v. Morrison, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). Even more recently, the United States Supreme Court harkened back to a 19th century expression of the standard: " 'Proper respect for a co-ordinate branch of the government' requires that we strike down an Act of Congress only if 'the lack of constitutional authority to pass [the] act in question is clearly demonstrated.' " Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 538, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) (citing United States v. Harris, 106 U.S. 629, 635, 1 S.Ct. 601, 27 L.Ed. 290 (1883) ).
¶80 This court continues to reflexively apply the rule without any acknowledgement of the United States Supreme Court's reformulation of the standard. See, e.g., Voters with Facts v. City of Eau Claire, 2018 WI 63, ¶ 65, 382 Wis. 2d 1, 913 N.W.2d 131 ("All legislative acts are presumed constitutional and we must indulge every presumption to sustain the *701 law." (quoting Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶ 13, 358 Wis. 2d 1, 851 N.W.2d 337 ) ); State v. Grandberry, 2018 WI 29, ¶ 12, 380 Wis. 2d 541, 910 N.W.2d 214 ; Blake v. Jossart, 2016 WI 57, ¶ 27, 370 Wis. 2d 1, 884 N.W.2d 484, cert. denied, --- U.S. ----, 137 S.Ct. 669, 196 L.Ed.2d 526 (2017) ("A party challenging a statute overcomes the strong presumption of constitutionality only by demonstrating that the statute is unconstitutional beyond a reasonable doubt." (citing Aicher, 237 Wis. 2d 99, ¶ 18, 613 N.W.2d 849 ) ); Winnebago Cty. v. Christopher S., 2016 WI 1, ¶ 33, 366 Wis. 2d 1, 878 N.W.2d 109, cert. denied sub nom., Christopher S. v. Winnebago Cty., --- U.S. ----, 136 S.Ct. 2464, 195 L.Ed.2d 805 (2016) ("Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." (quoting State v. Dennis H., 2002 WI 104, ¶ 12, 255 Wis. 2d 359, 647 N.W.2d 851 ) ). The United States Supreme Court will strike down statutes upon a "plain showing" of their unconstitutionality, or when their unconstitutionality is "clearly demonstrated." The latter wording is strikingly similar to the "clear and manifest" standard applied in very early Wisconsin case law.
¶81 Legal scholarship advocating for a weaker presumption of constitutionality (or its elimination altogether) sustains the ongoing debate over the proper balance of constitutional powers between the legislature and the judiciary. See, e.g., Randy Barnett, Restoring the Lost Constitution: The Presumption of Liberty 273 (2003) (arguing that courts should change the standard from a "presumption of constitutionality" to a "presumption of liberty" wherein the government, not the challenger, must prove the "necessity and propriety of its restrictions on liberty"); Green, supra ¶8, at 171 (suggesting that the "the middle requirement, clarity, has the best historical pedigree" and should be the standard). They present many logical, practical, and, of greatest importance, constitutional reasons for altering the burden of proof in constitutional challenges to statutes.
¶82 To begin with, the current standard in Wisconsin is unworkable, given that a party not only must challenge the legislature's expressed reasoning behind implementing a statute, but must also disprove any rational speculation that could be invoked to support the statute's constitutionality-regardless of whether the legislature actually relied upon that rationale in adopting it. See David M. Burke, The Presumption of Constitutionality Doctrine and the Rehnquist Court: A Lethal Combination for Individual Liberty, 18 Harv. J. L. & Pub. Pol'y 73, 86 (1994-95) (a petitioner must show there is no conceivable interpretation of the Constitution that could support the statute); id. (" '[I]f any state of facts reasonably may be conceived to justify' a legislative determination, then it is 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision.' " (first quoting McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) ; then quoting Flemming v. Nestor, 363 U.S. 603, 612, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) (footnotes omitted) ) ); see also Barnett, supra ¶14, at 228 (asking rhetorically, "who 'realistically' is in the best position to present a court with empirical information for or against the necessity" and answering implicitly, the government). If the justifications available for a challenged law are not tied to the actual reasons the law was passed, then the constitutional validity of a statute rests on the imagination of the State's lawyers.
¶83 It has never been clear why courts choose to apply an evidentiary burden of *702 proof for establishing guilt in criminal cases in assessing the constitutionality of a statute. This court previously explained away this concern:
While this burden of proof is often associated with the requisite proof of guilt in a criminal case, in the context of a challenge to the constitutionality of a statute, the phrase "beyond a reasonable doubt" expresses the "force or conviction with which a court must conclude, as a matter of law, that a statute is unconstitutional before the statute or its application can be set aside."
League of Women Voters of Wis. Educ. Network, Inc. v. Walker, 2014 WI 97, ¶ 17, 357 Wis. 2d 360, 851 N.W.2d 302 (emphasis added) (quoting Ponn P., 279 Wis. 2d 169, ¶ 18, 694 N.W.2d 344 ). If "beyond a reasonable doubt" means something different in assessing the constitutionality of statutes, we should not transfer the exact same words from a criminal evidentiary standard applied to facts into an analysis of the law. See Island Cty. v. State, 135 Wash.2d 141, 955 P.2d 377, 386 (1998) (Sanders, J., concurring) ("[L]egal questions are not ordinarily presumptive candidates because the law is at hand. Thus, all courts determine legal issues de novo." (citations omitted) ). In assessing the constitutionality of a law, the court examines just that: the law. See Appling v. Walker, 2014 WI 96, ¶ 18, 358 Wis. 2d 132, 853 N.W.2d 888. It does not examine the law in the same way the finder of fact in a criminal trial evaluates witness' factual testimony for credibility or reliability in order to ascertain the defendant's guilt or innocence.
¶84 Rather, as the constitutional body vested with the power to say "what the law is," the judiciary evaluates a statute for its fidelity to the constitution, and "an act of the legislature, repugnant to the constitution, is void." Marbury, 5 U.S. (1 Cranch) at 177. When a law contravenes the constitution, it is our duty to say so. The "beyond a reasonable doubt" standard interferes with this judicial responsibility. Applying this standard places courts in an absurd position: We could determine a law is more likely than not unconstitutional, and we would still uphold it.[3] We could even conclude a party has shown clearly and convincingly that a law is unconstitutional, and still we would sustain it.[4] This scheme of review scrambles the constitutional roles of the judiciary and the legislature, making legislators the judges of their own laws. "If it be said that the legislative body are themselves the constitutional judges of their own powers, and that the construction they put upon them is conclusive upon the other departments, it may be answered, that this cannot be the natural presumption, where it is not to be collected from any particular provisions in the Constitution." The Federalist No. 78 at 467 (Alexander Hamilton) (Clinton Rossiter ed., 1961). The "beyond a reasonable doubt" standard also disrupts the hierarchy of laws by making statutes superior to the constitution.
The Constitution is either a superior, paramount law, unchangeable by ordinary *703 means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it. If the former part of the alternative be true, then a legislative act contrary to the Constitution is not law; if the latter part be true, then written Constitutions are absurd attempts on the part of the people to limit a power in its own nature illimitable.
Marbury, 5 U.S. (1 Cranch) at 177. Judicial respect for its co-equal branch, the legislature, cannot amount to surrender of judicial power or abdication of judicial duty.
¶85 The burden of proof in criminal cases purportedly is rooted in Blackstone's observation that "it is better that ten guilty persons escape than one innocent suffer." 4 William Blackstone, Commentaries*358. This precept does not translate in the context of examining a statute's constitutionality: Is it better that the constitution be violated ten times lest one constitutional law be struck down? Is it better that we deny the people's constitutional rights ten times to avoid mistakenly striking down a single constitutional law? Notably, the consequences of upholding unconstitutional laws are not confined to a single party in a single case. Rather, failure to strike down an unconstitutional law harms all of the people of this state in potential perpetuity.
¶86 Employing the "beyond a reasonable doubt" burden of proof in judging a statute's constitutionality substantiates one of the Framers' chief concerns: that Legislatures should not be the "constitutional judges of their own powers." Burke, supra ¶15, at 90 ("[I]n a constitutional system of delegated authority it 'cannot be the natural presumption' that the members of Congress are to be regarded as 'the constitutional judges of their own powers ....' " (citing The Federalist No. 78, supra ¶17, at 467 (Alexander Hamilton) ).)
¶87 Under the current framework, in contrast to the structural separation of powers our framers envisioned, judicial deference gives the legislature both the pen and the gavel over their own laws, and imposes a "tremendous burden" on individuals attempting to limit the constitutional overreach of legislative power. Burke, supra ¶15, at 90. Imposing a "beyond a reasonable doubt" standard is currently at odds with the constitutional principle that the legislature, not the people, should be the one to identify the legislature's source of power. Id. at 84 ("The powers of Congress ... have as their sole origin a Constitution which delegates and limits powers. It necessarily follows, then, that the burden lies with Congress to point to its source of power.").
¶88 This court recently reiterated the importance of the separation of powers in establishing and preserving a government of, by, and for the people. Gabler, 376 Wis. 2d 147, ¶ 39, 897 N.W.2d 384 ("If the judiciary passively permits another branch to arrogate judicial power unto itself, however estimable the professed purpose for asserting this prerogative, the people inevitably suffer. ... [T]he people lose their independent arbiters of the law, the balance of powers tips, and the republican form of government is lost."). We recently jettisoned judicial deference long afforded to interpretations of law by administrative agencies. Tetra Tech EC, Inc. v. DOR, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21. The time is ripe for this court to embrace its constitutional duty to protect the people from encroachments by the legislature on constitutional rights.
¶89 A strong presumption of constitutionality empowers legislators to serve as "judges in their own case when a citizen claims that a law restricting his or her liberty is irrational or arbitrary." Barnett, supra ¶7, at 245. In Federalist 10, James *704 Madison warned that "a body of men are unfit to be both judges and parties at the same time," recognizing that "many of the most important acts of legislation" are "judicial determinations." The Federalist No. 10, supra ¶17, at 79 (James Madison). Serving as the protector of constitutional rights ultimately rests with "courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing." The Federalist No. 78, supra ¶17, at 466 (Alexander Hamilton) (emphasis added).
¶90 Replacing the "beyond a reasonable doubt" burden with one requiring a "plain showing" or simply clarity in establishing the unconstitutionality of a statute, as the United States Supreme Court did decades ago, would restore the balance of power between the judiciary and the legislature in Wisconsin. Such a standard of review would conserve the legislature's constitutional lawmaking function while reinstating the courts' role as the "bulwarks of a limited Constitution against legislative encroachments ...." The Federalist No. 78, supra ¶17, at 469 (Alexander Hamilton).
¶91 The Constitution's supremacy over legislation bears repeating: "the Constitution is to be considered in court as a paramount law" and "a law repugnant to the Constitution is void, and ... courts, as well as other departments, are bound by that instrument." See Marbury, 5 U.S. (1 Cranch) at 178, 180.
III
¶92 The majority aptly criticizes the Ferdon court's application of "rational basis with teeth" to strike the prior cap on noneconomic damages for usurping the legislature's policymaking role. Majority op., ¶32. As the State accurately argued in its amicus brief, "the cap's level is a quintessentially legislative judgment" which makes it the prerogative of the legislature to set. The cap implicates no constitutional rights whatsoever; as plaintiffs' counsel conceded at oral argument, the legislature could set the cap at zero-thereby eliminating the recovery of noneconomic damages altogether-without offending the constitution. Recovery of such damages is a matter of common law, not constitutional law. The legislature retains full authority to define, limit, or abrogate common law causes of action. Aicher, 237 Wis. 2d 99, ¶ 51, 613 N.W.2d 849. The Wisconsin Constitution expressly permits this. Majority op., ¶64. And because the cap treats all medical malpractice plaintiffs exactly the same, no equal protection or due process inquiry is necessary.
¶93 Because the majority opts to apply rational basis review in this case, I would clarify that this lower level of review is appropriate for laws that confer a benefit, such as the system of guaranteed recovery for medical malpractice claimants we consider here. However, when laws are alleged to impair fundamental constitutional rights, courts must apply a higher level of scrutiny. Porter v. State, 2018 WI 79, 382 Wis. 2d 697, 913 N.W.2d 842 (R. Grassl Bradley, J., and Kelly, J., dissenting).
IV
¶94 Wisconsin courts must afford appropriate deference to legislatures in their lawmaking function. Legislators are the people's representatives, elected to enact laws that reflect the policy preferences of the people. However, the constitution imposes limits on that broad power; the legislature may not enact laws that infringe constitutional rights. Under our structural separation of powers, the people task the judiciary with the ultimate authority to declare legislative acts unconstitutional. The judiciary does not fulfill this duty if it subordinates its independent judgment to *705 the legislature's by making legislative acts superior to the constitution. "[T]here is no liberty, if the judiciary power be not separate from the legislative." 7 B. De Montesquieu, Spirit of the Laws 152 (Nugent ed., 1823).
¶95 I join the majority in upholding the statutory cap on noneconomic damages in medical malpractice actions set forth in Wis. Stat. § 893.55, which does not implicate or offend any constitutional right. I write separately to urge this court to reconsider its application of the "beyond a reasonable doubt" standard in cases that present constitutional challenges.
¶96 I respectfully concur.
¶97 I am authorized to state that Justice DANIEL KELLY joins this concurrence.

Although Judge Brash concurred, taking the position that the damages cap is unconstitutional as applied to the Mayos rather than facially unconstitutional, the court of appeals was unanimous that the damages cap violates the constitutional guarantee of equal protection.

The legislature sets forth the damage cap's objectives in Wis. Stat. § 893.55(1d)(a). The four bases advanced are:
1. Protecting access to health care services across the state and across medical specialties by limiting the disincentives for physicians to practice medicine in Wisconsin, such as the unavailability of professional liability insurance coverage, the high cost of insurance premiums, large fund assessments, and unpredictable or large noneconomic damage awards, as recognized by a 2003 U.S. [C]ongress joint economic committee report, a 2003 federal department of health and human services study, and a 2004 office of the commissioner of insurance report.
2. Helping contain health care costs by limiting the incentive to practice defensive medicine, which increases the cost of patient care, as recognized by a 2002 federal department of health and human services study, a 2003 U.S. [C]ongress joint economic committee report, a 2003 federal government accounting office study, and a 2005 office of the commissioner of insurance report.
3. Helping contain health care costs by providing more predictability in noneconomic damage awards, allowing insurers to set insurance premiums that better reflect such insurers' financial risk, as recognized by a 2003 federal department of health and human services study.
4. Helping contain health care costs by providing more predictability in noneconomic damage awards in order to protect the financial integrity of the fund and allow the fund's board of governors to approve reasonable assessments for health care providers, as recognized by a 2005 legislative fiscal bureau memo, a 2001 legislative audit bureau report, and a 2005 office of commissioner of insurance report.
Wis. Stat. § 893.55(1d)(a)1.-4. Although these four reasons are more detailed, they essentially present the same justifications that were tested and rejected in Ferdon. See Mayo v. Wis. Injured Patients and Families Comp. Fund, 2017 WI App 52, ¶ 27, 377 Wis. 2d 566, 901 N.W.2d 782.

For example, our neighboring state of Minnesota, which has no damage cap, retains its physicians at a higher rate than does Wisconsin. See Ass'n of American Medical Colleges, 2011 State Physician Workforce Data Book 54-55 (Nov. 2011), https://www.aamc.org/download/263512/data/statedata2011.pdf.

According to the Fund's 2016 Functional and Progress Report, as of June 30, 2016, the assets of the Fund totaled over $1.3 billion, over $878 million of which is surplus. Wisconsin Injured Patients and Families Compensation Fund, Office of the Commissioner of Insurance (OCI), 2016 Functional and Progress Report 13-14, https://oci.wi.gov/Documents/Funds/IPFCFANNRPT16.pdf. This is more than ample to cover the Fund's obligations.